**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DEBORAH A. PERLICK,
      Appellant,

v.

DEPARTMENT OF VETERANS
    AFFAIRS,
      Agency.

DOCKET NUMBER
NY-1221-19-0052-X-1

DATE: August 2, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Robert B. Stulberg</u>, Esquire, New York City, New York, for the appellant.

<u>Mark E Frassinelli</u>, Esquire, Pittsburgh, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

**FINAL ORDER**

This case is before the Board pursuant to a January 12, 2022 compliance initial decision in which the administrative judge found the agency in partial noncompliance with the Board's final decision in the underlying appeal. *Perlick*

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

*v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-19-0052-C-1, Compliance File, Tab 6, Compliance Initial Decision (CID); *Perlick v. Department of Veterans Affairs*, MSPB Docket No. NY-1221- 19-0052-W-2, Appeal File, Tab 18, Initial Decision (ID).  For the reasons stated below, we find the agency in compliance and DISMISS the petition for enforcement.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

On January 12, 2022, the administrative judge issued a compliance initial decision finding the agency in partial noncompliance with the Board's December 23, 2020 final decision in the underlying appeal.  CID.  The administrative judge held that the agency had failed to pay the appellant all the back pay and interest to which she was entitled; had not adjusted the appellant's benefits with appropriate credits and deductions in accordance with the Office of Personnel Management's regulations; and had not informed the appellant in writing of all the actions the agency had taken to comply with the Board's order and the date on which the agency believed it had fully complied.  *Id.* at 3-4.  Specifically, the administrative judge found that while the agency had paid the appellant $48,716.66, representing back pay for the period between November 3, 2017, and June 6, 2018, it still owed the appellant back pay from June 7, 2018, through March 31, 2020.  *See id.* at 2 n.2, 3-5; ID at 16.

The administrative judge ordered the agency to "[p]ay appellant . . . for the appropriate amount of back pay, with interest, through March 31, 2020, minus . . . []$48,716.66[,] and to adjust her benefits with appropriate credits and deductions (among these a credit of $11,359.44 in Thrift Savings Plan deductions and $1,668.72 in health insurance for the back pay period)."  *Id.* at 5.  The administrative judge further ordered the agency to "[i]nform appellant in writing of all actions taken to comply with the Board's Order and the date on which it believes it has fully complied." *Id.*

In the compliance initial decision, the administrative judge informed the agency that, if it decided to take the compliance actions required by the decision, it must submit to the Office of the Clerk of the Board, within the time limit for filing a petition for review under 5 C.F.R. § 1201.114(e), a statement that it had taken the actions identified in the compliance initial decision, along with evidence establishing that it had taken those actions. CID at 5-6; 5 C.F.R. § 1201.183(a)(6)(i). She also informed the parties of their option to request Board review of the compliance initial decision by filing a petition for review by February 16, 2022, the date on which the findings of noncompliance would become final unless a petition for review was filed. CID at 6-7; *see* 5 C.F.R. §§ 1201.114(e), 1201.183(a)(6)(ii), 1201.183(b). Neither party petitioned for review. Accordingly, pursuant to 5 C.F.R. § 1201.183(b)-(c), the administrative judge's findings of noncompliance became final, and the appellant's petition for enforcement was referred to the Board for a final decision on issues of compliance.

On February 17, 2022, the Office of the Clerk of the Board issued an acknowledgment order in the instant proceeding advising the parties that the petition for enforcement had been referred to the Board for a final decision and ordering the agency to submit evidence of compliance within 15 calendar days. *Perlick v. Department of Veterans Affairs*, MSPB Docket No. NY-1221-19-0052-X-1, Compliance Referral File (CRF), Tab 1 at 3. On March 2, 2022, the agency filed its response, asserting that it had taken certain personnel actions to effectuate the back pay payment to the appellant, although the appellant had not yet received the back pay, and submitting documentation of those personnel actions and a remedy ticket for the Defense Finance and Accounting Service (DFAS) requesting DFAS process the back pay payment. CRF, Tab 2. The agency argued that it had fully complied with the Board's Order. *Id.* at 4-5.

On March 22, 2022, the appellant responded to the agency's statement of compliance and alleged that she had not received the payments she was owed,

other than a check for $1,668.72, to compensate her for improper health insurance deductions. CRF, Tab 3 at 2. The appellant further noted that the agency still had not provided a detailed narrative explaining how its evidence of compliance satisfied the requirements of the compliance initial decision. *Id.* at 15-16.

On June 21, 2022, the Clerk of the Board issued an order directing the agency to respond to the appellant's challenges to its compliance submission. CRF, Tab 4 at 5. The Clerk further directed the agency to "identify, by name and address, the agency official charged with complying with the Board's order and provide evidence that it has informed such official in writing of the potential sanction for noncompliance . . . even if the agency asserts that it has fully complied with the Board's order." *Id.*

On June 30, 2022, the agency responded to the June 21, 2022 Order. In its response, the agency stated that on May 9, 2022, the agency received notice of certified delivery to the appellant of a check in the amount of $174,302.28. CRF, Tab 5 at 5, 81-82. The agency also re-submitted the same summary of personnel actions, SF-50s, and DFAS remedy ticket it attached to its March 2022 filing. *See id.* at 9-40.

On July 20, 2022, the appellant submitted a reply, noting that she had received the certified check in the amount of $174,302.28, but contending that the agency still had not provided her with a detailed, clear explanation of the calculations of the amounts due. CRF, Tab 6 at 7, 9-10. Instead, the agency had provided the appellant Excel spreadsheets from DFAS that appeared to state the amounts due to her, but without an explanation of the codes and abbreviations used in the spreadsheets. *Id.* at 9-10. The appellant further argued that the agency had not carried its burden of proving compliance due to its failure to explain its calculations and had failed to identify the agency official charged with compliance. *Id.* at 10. The appellant requested an award of monetary sanctions and leave to file a claim for attorney fees and costs. *Id.* at 11.

On September 27, 2022, the Board issued an order finding the agency noncompliant and directing it to:

> (1) clearly set forth the gross amount due the appellant and show how that amount was determined; (2) clearly set forth the amount and reason for all deductions, reductions, and offsets from the gross amount due the appellant; (3) clearly set forth the source and amount of all checks or electronic payments already received by the appellant and provide evidence that such checks or electronic payments were received; and (4) clearly set forth the amount of interest due the appellant and how that amount was calculated. The agency must also clearly set forth its calculations relating to the appellant's sick and annual leave balances, her Thrift Savings Plan account (including both the appellant's and the agency's contributions), and any other benefits of employment the appellant should have received but for the agency's unwarranted personnel action.

CRF, Tab 7 at 8. The Board also directed the agency to provide "a narrative explanation of its calculations . . . [and] an explanation of all codes and abbreviations used." *Id.*

On October 17, 2022, the agency filed its response to the Board's order, submitting several attachments, including a statement from E.J., a supervisor at DFAS, describing the back pay calculations; a "detailed narrative of retro back pay" from A.M., a payroll supervisor from the agency, which explained the contents of the back pay settlement spreadsheets, including annual leave lump sum calculations; a DFAS Back Pay Audit, which included interest calculations; summaries of payment; and an October 17, 2022 email from the agency to appellant's counsel detailing the actions it had taken to comply. CRF, Tab 9, at 8-78.

The appellant replied on October 27, 2022, arguing that the agency was still not in compliance, asserting that the agency had failed to adequately explain the appellant's sick and annual leave balances and its interest calculations, and had not provided adequate evidence that its back pay payments were received. CRF, Tab 10 at 4-5.

On January 31, 2024, the agency submitted additional evidence of compliance, which consisted of tables calculating the appellant's sick and annual leave balances.  CRF, Tab 11 at 4-13.

On January 31, 2024, the appellant filed a response noting that the agency's submission was unsworn, that the 2020 annual leave calculation in the agency's January 31, 2024 submission was less by five hours than the original leave calculation in its October 17, 2022 submission, and that the agency did not address the appellant's previous contentions in its October 27, 2022 response. CRF, Tab 13 at 10.

## ANALYSIS

The agency bears the burden of proving that it has complied with a Board order.  *Mercado v. Office of Personnel Management*, 115 M.S.P.R. 65, ¶ 4 (2010). The agency is required to produce relevant, material, and credible evidence of compliance in the form of documentation or affidavits.  *Spates v. U.S. Postal Service*, 70 M.S.P.R. 438, 443 (1996).  The appellant may rebut the agency's evidence of compliance by making "specific, nonconclusory, and supported assertions of continued noncompliance."  *Brown v. Office of Personnel Management*, 113 M.S.P.R. 325, ¶ 5 (2010).

In this case, the compliance initial decision ordered the agency to pay the appellant the correct amount of back pay and interest on the back pay, and to adjust her benefits with appropriate credits and deductions.  CID at 5.  In its October 17, 2022 submission, the agency submitted a DFAS Audit, which consisted of spreadsheets documenting the amount of back pay owed to the appellant for each year from 2017-2020; the DFAS Summary of Payment, which set forth the amount of back pay and deductions in each back pay installments; Back Pay Computation Summary Reports for two back pay installments, which detailed the interest rate and total accrued interest for each pay period; a spreadsheet setting out deductions per pay period; and narrative explanations of

the DFAS Back Pay Audit from E.J., of DFAS, and from A.M., the Payroll Supervisor at the James J. Peter Bronx VA Medical Center. CRF, Tab 9.

In her October 27, 2022 response, the appellant argued that the agency had not:

> provided information concerning how it derived the inputs used to generate those [interest calculator] tables, including the following inputs: (i) the applicable interest rates; (ii) the number of days in each pay period; (iii) the number of days between the end of a pay period and when paychecks are issued; (iv) when the first day of the pay period was for each period during which back pay was payable; and (v) the day on which back pay ceased accruing interest.

CRF, Tab 10 at 5. However, the number of days in a pay period, the number of days between the end of the pay period and when paychecks are issued, and the date of the first day of each pay period are standard numbers, and, in addition, the information in the spreadsheets provided by the agency is consistent with the information regarding pay periods provided in the Back Pay Computation Summary Report. CRF, Tab 9 at 18-42. With respect to the applicable interest rates, the Back Pay Act provides for interest to be paid at the overpayment rate in the Internal Revenue Code. 5 U.S.C. § 5596(b)(2)(B); 26 U.S.C. § 6621(a)(1).[2] The Office of Personnel Management publishes these rates on its website. A comparison of the rates used by the agency and those on OPM's website demonstrates that the interest rates used were correct. Moreover, interest accrual ends at a time selected by the agency that is no more than 30 days before the date of the back pay interest payment. 5 C.F.R. § 550.806(a)(2). In each back pay installment, the agency correctly ended the interest rate accrual less than 30 days before the date of the payments. CRF, Tab 9 at 21, 22, 32. Accordingly, we find the agency in compliance on this point.

The appellant also contended that the VA did not satisfactorily provide evidence regarding the source and amount of checks received by the appellant or

---

[2] The overpayment rate consists of the Federal short-term rate plus 3 percentage points. 26 U.S.C. § 6621(a)(1).

demonstrating that she received any payments. CRF, Tab 10 at 5. However, the appellant conceded that she had received payments from DFAS of the amounts set forth in the agency's submissions. *Id.* at 5, n.1. Moreover, agency counsel provided a sworn declaration stating that the agency had received a certification from UPS that the $174,302.28 installment of back pay and interest had been delivered to the appellant's address. CRF, Tab 5 at 81. Accordingly, we find the agency in compliance regarding this issue.

The appellant argued in her most recent filing that the agency did not sufficiently explain the calculations of her leave, and that the agency's calculations of her annual leave in the last two filings were inconsistent. CRF, Tab 13 at 9-10. The agency, however, provided leave audits, which broke down appellant's leave into hours accrued per pay period for each year. CRF, Tab 11 at 2-13. Moreover, according to the agency's October 17, 2022 filing, the appellant accrued 41 hours of annual leave in 2020. CRF, Tab 9 at 44. In the agency's January 31, 2024 filing, the 2020 Annual Leave Table states that the appellant accrued 35 hours of leave in 2020. CRF, Tab 11 at 13. We note that the appellant was paid for 41 hours of annual leave in 2020, CRF, Tab 9 at 44, and if the agency erred in its 2020 annual leave calculation, its error favored the appellant by $311.25. As any error by the agency is in the appellant's favor, we find the agency in compliance on this point.

Finally, regarding the appellant's request for sanctions, we deny the request. The Board's sanction authority is limited to the sanctions necessary to obtain compliance with a Board order. *Mercado v. Office of Personnel Management*, 115 M.S.P.R. 65. ¶ 8 (2010) (stating that the Board's ability to award sanctions is a means to enforce compliance, and once compliance has been demonstrated, it would be inappropriate to impose sanctions). Because the agency has complied with the Board's orders, we are without authority to impose sanctions in this matter.

**ORDER**

For the reasons discussed above, we find the agency in compliance and DISMISS the petition for enforcement. The appellant's motion for leave to file attorney's fees is denied, but the appellant may now file a motion for attorney's fees and costs as set forth below and in accordance with 5 C.F.R. § 1208.203. This is the final decision of the Merit Systems Protection Board in this compliance proceeding. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

**NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS[3]**

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

(1) **Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (not the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); see *Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below: http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.